IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JADE V. GREEN | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 16-cv-0863-MJR-DGW |
| | ) |
| CHRIS QUICK, | ) |
| RUSSELL ADAMS, | ) |
| JACK HOWSER, and | ) |
| ANGELA HOWSER, | ) |
| | ) |
|    Defendants. | ) |

MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

I.    Introduction

On July 29, 2016, Plaintiff Jade Green filed a Complaint with the Court alleging that the Defendants violated her rights under 42 U.S.C. § 1983 and 5 U.S.C. § 557 via their handling of the custody of her daughter. Green claims that Defendants Quick and Adams improperly took her child and placed the child in the protective custody of her parents (Defendants Jack and Angela Howser ("the Howsers")) without following the requisite procedural and administrative processes for such a custodial action. Additionally, she alleges that Defendants Quick, Adams, and the Howsers acted in a conspiracy to deprive her of the custody of her daughter. Green seeks $500,000.00 in damages, $1,000,000.00 in punitive damages, and costs and fees. In connection with

these claims, Green named Chris Quick (Illinois State's Attorney), Russell Adams (Lawrence County, Illinois, Sheriff), Jack Howser (Plaintiff's step-father), and Angela Howser (Plaintiff's mother).[1] The matter is now before the Court for a decision on Defendants Quick and Adams's Motions to Dismiss (Docs. 30, 31).

II.     Facts

Plaintiff Green alleges that on November 2, 2014, Defendants Quick and Adams acted in conspiracy with the Howsers to deprive her of custody of her child (Doc. 1 at 2). She claims that they did so by orchestrating an arrest on a warrant for a bad check (*Id.*). At the time of the arrest, Defendant Adams (pursuant to the advice of Defendant Quick) directed local law enforcement to place Green's minor child in 'protective custody' with the Howsers (*Id.* at 2-3). Plaintiff argues that the Defendants developed the conspiracy in an effort to give the Howsers grounds to secure permanent custody via state court custody proceedings that were ongoing at the time of the November 2 incident. Plaintiff claims that the act of taking her child and placing the child with the Howsers was not a proper action for Defendants Quick or Adams, and that it constituted a violation of her custodial rights as recognized under the Constitution (*Id.*). As a result of the violative action, Plaintiff alleges that she incurred expenses and suffered emotional distress (*Id.* at 3-4).

---

[1] Jack and Angela Howser have not yet been successfully served. This Memorandum and Order pertains only to Defendants Chris Quick and Russell Adams who have appeared and have moved to dismiss the action.

Plaintiff appended a November 2, 2014 Police Report to her complaint that contained details of her arrest (Doc. 1-1 at 2). The report reflects inquiries by Joshua Green (Plaintiff's significant other) as to the custodial status of the child, including a request that the child be left in the custody of his mother (*Id.*). The Report also indicates that "SA Quick adv the child of Jade Green will be in the protective custody of Jack and Angela Howser. 51-1 Adv that Joshua was not to have child because of 2 OOP's against him. If Jade wants him to have child then the child would be put into protective custody and brought to CJ and DCFS would be called" (*Id.*).

Plaintiff also appended a one-page-letter from a 'private investigator,' Herman Willis, Jr. (Doc. 1-1 at 3). The letter memorializes Willis's alleged meeting with Lawrence Chief of Police, James White (*Id.*). According to the letter, Chief White acknowledged awareness of the custody incident with Plaintiff's child, and indicated that Defendant Quick directed Defendant Adams to transfer the minor child to the Howsers (*Id.*).

III.  Legal Analysis

This Court accepts all factual allegations as true when reviewing a 12(b)(6) motion to dismiss. *Erickson v. Pardus*, **551 U.S. 89, 94 (2007).** At the motion to dismiss stage the Court is evaluating the sufficiency of the complaint, not the merits of the case. *Gibson v City of* **Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).** To avoid dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim

sufficient to show entitlement to relief and to notify the defendant of the allegations made against him. **FED. R. CIV. P. 8(a)(2)**; *Bell Atl. Corp. v. Twombly*, **550 U.S. 544, 555- 57 (2007).** In order to meet this standard, a complaint must describe the claims in sufficient factual detail to suggest a right to relief beyond a speculative level. *Id.; Ashcroft v. Iqbal*, **556 U.S. 662, 678 (2009);** *EEOC v. Concentra Health Servs.*, **496 F.3d 773, 776 (7th Cir. 2007).** A complaint need not contain detailed factual allegations, *Scott v. Chuhak & Tescon, P.C.*, **725 F.3d 772, 782 (7th Cir. 2013)**, but it must go beyond "mere labels and conclusions" and contain "enough to raise the right to relief above the speculative level," *G&S Holdings, LLC v. Cont'l Cas. Co.*, **697 F.3d 534, 537-38 (7th Cir. 2012)**. Put another way, to survive a motion to dismiss "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together [. . .] the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, **614 F.3d 400, 404 (7th Cir. 2010).**

A conspiracy claim need not be pled with Federal Rule 9(b) particularity, but conspiracy claims have historically been held to a higher pleading standard than others. *See Cooney v. Rossiter*, **583 F.3d 967, 971 (7th Cir. 2009) (discussing the conspiracy pleading standard in the context of an alleged conspiracy to deprive a parent of custody of her children);** *Loubser v. Thacker*, **440 F.3d 439, 442-43 (7th Cir. 2006) (discussing the conspiracy pleading standard in the context of a Section 1983 claim)**. The heightened standard requires the plaintiff to allege the parties, the general purpose,

and the approximate date of the conspiracy. *Loubser*, 440 F.3d at 443. The Seventh Circuit has found a conspiracy claim to be sufficiently stated even where the complaint was disjointed and the allegations of conspiracy were scattered throughout. *Id.* However, the Seventh Circuit has found that a general allegation of conspiracy against various participants in child custody proceedings was insufficient where the plaintiff simply alleged that a conspiracy existed without providing more specifics. *Cooney*, 583 F.3d at 971 ("The complaint in this case…is bereft of any suggestion, beyond a bare conclusion, that the remaining defendants were leagued in a conspiracy with the dismissed defendants. It is not enough that the complaint charges that 'Bischoff and Dr. Lyle Rossiter, with the aid of Judge Nordquist, Dan Cain, and Brian Klaung continued the ongoing violations of Plaintiff Deborah's Constitutional rights.' That is too vague.").

The Supreme Court has recognized the right of a parent to make decisions concerning the care, custody, and control of their children as "perhaps the oldest of the fundamental liberty interests recognized by this Court" more than 90 years ago. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) *citing Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923). Illinois statutes provide certain procedures and protections for custodial transfers of minor children. *See e.g.* 705 ILL. COMP. STAT. 405/2-5 (discussing when a law enforcement officer may take custody of a minor child). Specifically in the context of removing a child from his parent's custody, the Seventh Circuit held that if the

removing official "could have reasonably believed [the child's] removal to be lawful, in light of clearly established law and the information they possessed" the official would be entitled to qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, **657 F.3d 463, 475-77 (7th Cir. 2011) (finding that summary judgment in favor of DCFS actors was appropriate where the actors could have reasonably believed that taking custody of the child was necessary to protect the child from physical abuse).** However, the Seventh Circuit has also found on a distinct set of facts that immunity may not always protect public officials acting to remove a child from the custody of his or her parent. *See Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1014 (7th Cir. 2000).

The Supreme Court has recognized two types of immunity under Section 1983 that are relevant to this action—prosecutorial immunity and qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). In determining which level of immunity applies, the Court has developed a "functional approach, which looks to the 'nature of the function performed, not the identity of the actor who performed it." *Id.* at 269. For example, statements to the media by a prosecutor have been found to fall within the specter of qualified immunity, while actions of a prosecutor during hearing seeking a warrant were found to be covered by absolute prosecutorial immunity. *Id.* at 278. Under the functional approach rationale, the media statements are not central to a prosecutor's official duty, while actions during the course of a court hearing are part

and parcel of the official duty—a distinction that justifies the differing levels of immunity. *Id.* **at 277-78;** *Burns v. Reed***, 500 U.S. 478, 492-96 (1991).**

The Supreme Court has also recognized the right of prosecutors to enjoy absolute immunity in their professional duties to the extent those duties are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein,* **555 U.S. 335, 341 (2009) quoting** *Imbler v. Pachtman***, 424 U.S. 409, 430 (1976);** *see Smith v. Power***, 346 F.3d 740, 742 (7th Cir. 2003).** The Seventh Circuit has also interpreted this protection to encompass conduct leading up to the initiation of civil or criminal judicial actions. *Smith***, 346 F.3d at 742-43** For example, the Court held that a prosecutor had immunity for the act of issuing a notice that was a prerequisite to the demolition of property because the issuance of the notice was an initial step towards a civil action to endorse the demolition. *Id.* By contrast, purely investigative actions are not afforded immunity. *See Buckley***, 509 U.S. at 273.** Additionally, the Supreme Court has held that a prosecutor is not entitled to absolute immunity for giving police officers legal advice. *Burns***, 500 U.S. at 496.**

The Seventh Circuit recently upheld a district court's denial of a motion to dismiss by a state prosecutor on qualified immunity grounds in *Armstrong v. Daily***, 786 F.3d 529, 533 (7th Cir. 2015).** The *Armstrong* Court noted that "[w]e must proceed on the premise that the defendants acted as Armstrong has alleged and did so in bad faith." *Id.* "The qualified immunity defense requires us to consider only two limited questions

as this stage: first, whether plaintiff has alleged a violation of his constitutional rights, and second, whether the violation was clearly established in the law at the time of the defendant's conduct." *Id.* Qualified immunity for a prosecutor, or for any other government official, protects the official from being "subject to damages liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley***, 509 U.S. at 268**.

It is incumbent upon the party seeking immunity to prove that their actions qualify for immunity. *See e.g. Burns***, 500 U.S. at 486-87.**

Federal suits against state officials in their official capacity are barred by the Eleventh Amendment. *Brokaw***, 235 F.3d at 1009,** *citing Gossmeyer v. McDonald* **, 128 F.3d 481, 487 (7th Cir. 1997).** By contrast, an individual capacity suit is not barred by the Eleventh Amendment. *Id.* Where a state official treats a suit as an individual capacity suit by asserting the defense of qualified immunity, the Seventh Circuit has held that it will also treat the suit as an individual capacity suit, even if it could hypothetically be brought as an official capacity claim. *Id.*

Here, the complaint makes two essential assertions about the Defendants' conduct— first, that all four Defendants acted in a conspiracy to deprive the Plaintiff of her custodial rights to her child, and, second, that Defendants Quick and Adams did so by exercising their authority in an improper manner to effectuate the transfer of custody of

Plaintiff's child to the Howsers. The motions to dismiss by Quick and Adams, and the responses by the Plaintiff, do not address the conspiracy theory presented in the Complaint. Instead, the motions and responses focus solely on the issue of immunity. Immunity can be properly accepted as a dispositive basis at the 12(b)(6) stage, or at later junctures in the case, such as summary judgment. Defendants claiming immunity shoulder the burden of establishing the basis that qualifies them for said immunity. *See e.g. Burns*, **500 U.S. at 486-87.**

Defendant Quick has asserted absolute, qualified, and Eleventh Amendment immunity in his 12(b)(6) motion to dismiss. The motion focuses primarily on the notion that a prosecutor bears absolute immunity for charging decisions. Plaintiff's response alleges that Defendant Quick misconstrues her claim as pertaining to her arrest and prosecution for a bad check, when in fact the complaint is targeted at Defendant Quick's directions to law enforcement to grant protective custody of her child to the Howsers.

The parties' arguments on the issue of immunity are essentially ships passing in the night, and both sides appear to either lose sight of, or glaze over many details that would be central to a nuanced decision regarding immunity on the facts presented. Defendant Quick made a minimal attempt to argue that charging decisions are within a prosecutor's discretion, but he did not address how his advice to law enforcement would be classified. Applying the functional approach, the Supreme Court has held that a prosecutor is not entitled to absolute immunity for the act of giving advice to

police officers. *Burns*, **500 U.S. at 496.** Accordingly, Defendant Quick has not demonstrated that he is entitled to absolute immunity.

Turning to qualified immunity, Plaintiff has identified a protected interest—the right to make custodial decisions regarding her child; and, she has identified a potential violation of that right by the Defendant's acts in transferring custody of her child without her consent. She alleges that the Defendant violated her rights by failing to follow the procedures set forth by Illinois statute, **750 ILL. COMP. STAT. 405/5.** Defendant Quick has not made any argument about the propriety of his actions in relation to that statute. On the basis of the information presented, the Court finds that Defendant Quick has not carried the burden of demonstrating that he is entitled to qualified immunity at this juncture.

Defendant Quick also made a broad assertion that the Plaintiff failed to state a claim, and because she did so, he was entitled to immunity. Though it may be true that Plaintiff Green's claim is vague, Defendant Quick has not identified any particular infirmities that prevent him from understanding the allegations made against him, nor has he indicated how the pleading is otherwise deficient. Given the paucity of information, and the fact that the burden rests with the Defendant at this early juncture, the Court cannot say that dismissal on immunity grounds is appropriate.

Next, as to Defendant Adams, he asserts that he is entitled to qualified immunity because he was acting under the direction of Defendant Quick. The Plaintiff responds

that an official is not exempt from liability for his actions solely because he was acting at the direction of another official.

Defendant Adams's assertion of immunity suffers the same fate as Defendant Quick's in that it is ill-defined. The Plaintiff has at least, in the general sense, established a valid right, the right to direct the upbringing of her child. Illinois statutes provide procedures and mechanisms for changes in custodial status of a child. *See* **750 ILL. COMP. STAT. 405/2-5.** Plaintiff Green's assertion is that Defendant Adams did not comply with statutory mechanisms when he gave her child to the Howsers for protective custody. This assertion could, in some feasible sense, identify a clearly defined right and a violation thereof. Defendant Adams has not sufficiently borne the responsibility of proving his immunity at this juncture. Accordingly, Defendant Adams's Motion to Dismiss is **DENIED**.

Further development of the facts and legal arguments may well show that Defendant Quick or Adams does benefit from immunity, or that the Plaintiff has not identified a right that has been positively violated, but at this juncture the record is too scarce for the Court to dispose of the case on these issues. The Court need not resolve the possibility of Eleventh Amendment immunity under the Seventh Circuit's rationale that if a defendant asserts qualified immunity, the suit can be construed as one against an official in his individual capacity. *See Brokaw*, **235 F.3d at 1009.**

IV. Conclusion

The Defendants' Motions to Dismiss are hereby **DENIED** (Docs. 30, 31).  The Defendants have not carried the burden of establishing that they are entitled to immunity for the particular actions alleged in the complaint.  Furthermore, the Defendants have not addressed the theory that they acted in conspiracy with the Howsers.

**IT IS SO ORDERED.**

DATED: January 25, 2017

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge